```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID G. SHAUGHNESSY,
                                                      12-CV-6158T
                              Plaintiff,

            v.                                        ORDER

XEROX CORPORATION,
                              Defendant.
_____
```

## INTRODUCTION

Plaintiff David G. Shaughnessy ("Shaughnessy"), an employee of defendant Xerox Corporation ("Xerox"), brings this action pursuant to the Americans with Disabilities Act of 1990 (the "ADA") claiming that Xerox discriminated against him on the basis of a disability and retaliated against him for exercising rights under the ADA. Specifically, plaintiff alleges that Xerox failed to accommodate his disability of a sprained ankle, and retaliated against him for seeking an accommodation for his disability.

Defendant denies plaintiff's claims, and moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against the plaintiff. Defendant contends that because Shaughnessy was not a qualified person with a disability under the terms of the ADA, and therefore he can not establish any violation of the ADA. Xerox also contends that plaintiff has failed to state a prima facie case of retaliation. Shaughnessy opposes the defendant's motion. For the reasons set forth below, I grant

defendant's motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.

## BACKGROUND

The following facts are taken from the respective statements of fact submitted by the plaintiff and defendant. Plaintiff David Shaughnessy was hired by Xerox as a full time employee in 2006. In 2009, he became a Chemical Technician in the Emulsion Aggregation Toner Pilot Plant at Xerox's Webster, New York plant. Although plaintiff alleges that he performed his job satisfactorily, the defendant contends that plaintiff's work was often criticized; that he was often inattentive to his work, and that he had issues with absenteeism. Defendant further alleges that plaintiff often made mistakes which caused delays in production, spoilation of products, and lost time due to required decontamination and cleaning of equipment. Plaintiff contends that at all times during his employment he was rated "above average" and that he received monetary bonuses as a result of his work performance.

On January 18, 2010, plaintiff called into work to notify his supervisor that he had sustained a sprained ankle, and would be absent from work for two days. Although plaintiff contends that the injury was not a "simple sprain," he admits that he was diagnosed with a "sprained anterior talofibular ligament with a possible strained calcaneofibular ligament." Plaintiff missed work on January 19 and 20, 2010, and returned to work on crutches on

January 21, 2010. Plaintiff was under a work restriction imposed by his doctor which limited him to jobs involving no standing, lifting, pulling, or pushing for two weeks.

According to the plaintiff, following the expiration of the two week restriction period, plaintiff's supervisor requested that Shaughnessy provide Xerox with a medical release indicating that he had no further work restrictions. Plaintiff claims that he was unable to obtain such a release because in fact his ankle injury was getting worse, and, as a result plaintiff took additional medical leave on February 9, 2010. Although plaintiff was scheduled to return to work on February 22, 2010, with medical restrictions limiting him to light duty, he claims that his supervisor refused to allow him to return to work unless he was medically cleared to perform all of his job duties.

Plaintiff contends that because he could not return to work without any medical restrictions, he was placed on short-term disability leave. He returned to work in March, 2010, again, with light-duty work restrictions.

Plaintiff continued to work under medical restrictions, but claims that Xerox violated those restrictions by forcing him to perform jobs that included climbing stairs from a first floor to a second floor, and later up two flights of stairs. Plaintiff claims that as a result of being forced to climb stairs, he re-injured his ankle. According to the defendant, the supervisor that made the

work assignment did not believe that the work assignment violated plaintiff's restrictions because the assignment did not require plaintiff to climb or work at unprotected heights.

According to the defendant, on March 16, 2010, Shaughnessy damaged a toner dryer when he accidentally bent an auger. Xerox contends that the damage to the machine caused significant delays in production. As a result, plaintiff was issued a formal warning on March 18, 2010. The notice highlighted several alleged deficiencies in plaintiff's performance, including lack of attentiveness, incorrect assembly of machine parts, incorrect calculation of chemical ratios for an acid used in the production process, and several other mistakes or accidents. The warning also noted plaintiff's alleged failure to provide adequate notice of planned absences from work, and adjusting his own work schedule without approval. According to Xerox, the warning notified plaintiff that he needed to improve his performance within 60 days. It is undisputed that the warning did not result in a diminution of pay or benefits. On May 18, 2010, two months after the warning was issued, it was withdrawn on grounds that plaintiff's performance had improved.

Twelve days later, on May 26, 2010, plaintiff filed a charge of discrimination and retaliation with the EEOC. On January 24, 2012, the EEOC issued a right to sue letter to Shaughnessy indicating that the EEOC found no violation of any anti-

discrimination statute. Thereafter, plaintiff filed the instant action.

## **DISCUSSION**

### I. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. Tolan v. Cotton, ___, U.S., 134 S. Ct. 1861, 1863 (2014). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Scott v. Harris, 550 U.S. 372, 380 (2007)(citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

### II. Plaintiff has failed to establish that he disabled within the meaning of the ADA, and therefore has failed to state a prima facie case of disability discrimination.

The ADA, inter alia, prohibits discrimination against qualified individuals with a disability with respect to conditions of employment including hiring, advancement, discharge and compensation. 42 U.S.C.A. § 12112(a) (1995). To state a prima facie case of discrimination under the ADA, a plaintiff must

demonstrate that (1) he is a handicapped person within the meaning of the ADA; (2) he is otherwise qualified to perform the duties of his former job; (3) adverse employment action was taken against him because of his handicap; and (4) his employer is subject to the anti-discrimination provisions of the ADA. Joyce v. Suffolk County, 911 F.Supp. 92, 94 (E.D.N.Y. 1996) (citations omitted).

It is well settled, however, that the mere presence of a medical condition or impairment suffered by a plaintiff does not establish that the plaintiff is disabled under the ADA. Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir.2005) ("Not every impairment is a 'disability' within the meaning of the ADA"); 29 C.F.R. § 1630.2(j)(ii)("not every impairment will constitute a disability within the meaning of this section.")  Rather, to establish the existence of a disability, a plaintiff must demonstrate that he or she suffers from a physical or mental impairment that "substantially limits one or more major life activities . . . ."  42 U.S.C. § 12102(2)(A).  "Major life activities" are defined in the regulations promulgated by the EEOC as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  45 C.F.R. § 84.3(j)(2)(ii).

To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of

central importance to most people's daily lives." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 196-197. Moreover, "[t]he impairment's impact must also be permanent or long term." Id. at 198. See also Williams v. Salvation Army, 108 F.Supp.2d 303, 312-313 (S.D.N.Y.2001) ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities") (internal quotation marks and citations omitted). Finally, the determination of whether or not a person suffers a disability under the ADA "is an individualized inquiry" that does not rest on the mere diagnosis of an impairment. Sutton v. United Airlines, 527 U.S. 471, 483 (1999). Instead, courts are to look to "the effect of [an] impairment on the life of the individual." 29 CFR pt. 1630, App. § 1630.2(j). See also, Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151 (2d Cir.1998)(disability determinations to be made on an individualized case-by-case basis).

In the instant case, plaintiff has failed to establish that he is disabled under the ADA. It is well-settled that a temporary, non-severe injury does not constitute a disability under the ADA because such an injury does not substantially impair the person suffering the injury. Hamilton v. Niagara Frontier Transp. Auth., 2007 WL 2241794, at *12 (W.D.N.Y. July 31, 2007). "Courts within [the Second C]ircuit, and the vast majority of courts elsewhere which have considered the question, have held that temporary

disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act." Murray v. Bokman, Inc., 2001 WL 6036898, at *5 (W.D.N.Y. May 24, 2001), quoting Graaf v. North Shore Univ. Hosp., 1 F.Supp.2d 318, 321 (S.D.N.Y.1998). The Second Circuit Court of Appeals has held that non-severe impairments that are expected to last no more than seven months are not disabilities under the ADA. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir.1998) (superseded by statute on other grounds). Moreover, the regulations promulgated by the Equal Employment Opportunity Commission regarding the definition of a disability make clear that non-severe impairments "that last only for a short period of time are typically not covered" under the ADA. 29 C.F.R. pt. 1630 Appx.; Mastrio v. Eurest Servs., Inc., 2014 WL 840229, at *4 (D. Conn. Mar. 4, 2014) (noting that even under the "broadest definition of disability, short term or temporary impairments generally do still not render a person disabled within the meaning of the statute.") "[A]bsent allegations highlighting the extreme severity of the disability" courts in the Second Circuit have "adhered to the traditional notion that temporary or short term disabilities are not covered by the statute." Mastrio, 2014 WL 840229, at *4.

The undisputed evidence in the record establishes that plaintiff's ankle sprain was a temporary, non-severe impairment

that did not substantially limit plaintiff's ability to perform major life functions. While plaintiff's injury no doubt constituted a temporary inconvenience with respect to his ability to engage in major life functions, there is no evidence suggesting that the injury was, or was ever thought to be, a long-term condition. Indeed, within a month of the injury, plaintiff's doctor determined that he could return to work and stand or walk continuously for four hours, could bend, twist, and kneel frequently, and could lift objects weighing less than 20 pounds. Such restrictions do not support plaintiff's claim that he was significantly impaired for a substantial period of time. Accordingly, I find that plaintiff has failed to establish that he was a disabled person under the ADA. Because plaintiff has failed to establish that he was disabled under the ADA, I find that he has failed to state a claim of discrimination under the ADA.

> III. Plaintiff Has Failed to Establish That He was Retaliated Against for Attempting to Exercise Rights under the ADA.

Shaugnessy alleges that he was subjected to retaliation because he attempted to seek reasonable accommodations for his alleged disability. To establish a prima facie case of retaliation under the ADA, a plaintiff must show that: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius,

313 F .3d 713, 719 (2d Cir.2002). The adverse action must be materially adverse, which, in this context means any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 67-68 (2006). "Actions that are 'trivial harms'—i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse." Tepperwien v. Energy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011)(quoting Burlington, 548 U.S. at 68). The standard is objective and the court must consider the context in which the actions occurred to determine whether they are materially adverse. Id.

In the instant case, I find that plaintiff has failed to establish that he was retaliated against for exercising rights under the ADA. Plaintiff claims that he was issued a formal warning in March, 2010, and was subjected to increased scrutiny of his job performance as a result of taking time off from work because of his ankle injury, and because he returned to work under work restrictions. It is well established, however, that criticisms, and even written warnings, do not constitute adverse employment action where there is no diminution in pay, job status, or benefits. Parinello v. Bausch & Lomb, 2013 WL 1680152, at *9 (W.D.N.Y. Apr. 17, 2013) aff'd, 576 F. App'x 32 (2d Cir. 2014)("[O]ral and written warnings do not amount to materially

adverse conduct . . .")(quoting Chang v. Safe Horizons, 254 F. App'x 838, 839, 2007 WL 3254414, at *1 (2d Cir. Nov.5, 2007). Similarly, informing an employee that his or her performance is deficient, and needs to be improved, does not constitute adverse employment action. Parinello, 2013 WL 1680152 at *9 (placement of employee on performance improvement plan does not constitute adverse employment action.) Here, plaintiff received a formal warning indicating that his performance needed to improve over the course of two months. Two months later, after plaintiff's performance improved, the formal warning was withdrawn. At no time was plaintiff's pay, status, or benefits ever diminished. Accordingly, I find that plaintiff has failed to allege that he was subjected to any adverse employment action.

Moreover, even if plaintiff could establish a prima facie case of retaliation, I find that he has failed to rebut the legitimate, non-discriminatory rational proffered by Xerox for issuing a written warning to him. Xerox contends that a warning was issued to plaintiff only after he engaged in several actions that warranted such a warning. Indeed, plaintiff had been counseled regarding poor work performance even prior to injuring his ankle. In November, 2009, three months prior to his ankle injury, plaintiff was informed by defendant that his performance was not satisfactory. He was again informed of poor performance in March, 2010, after he had damaged equipment, and made mistakes including

releasing large amounts of dry toner into the air and spoiling product by not properly mixing chemicals or mis-adjusting equipment. Such reasons state valid, non discriminatory reasons for issuing a performance warning.

Plaintiff has not rebutted the reasons stated by the defendant for issuing the performance warning, and has presented no evidence from which a trier of fact could conclude that the reasons stated by Xerox for issuing the performance warning were pretextual, and that retaliation was the more likely reason for issuing the performance warning. Plaintiff alleges that he was issued a formal warning shortly after he complained that his manager did not sufficiently accommodate his injury, and that the temporal proximity of the two events establishes an inference of discriminatory retaliation. It is well settled, however, that while the timing of an adverse action may support an inference of discrimination for purposes of pleading a prima facie case of discrimination, such evidence, as a matter of law, does not rebut a legitimate, non-discriminatory basis for taking adverse action. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir.2010). Accordingly, plaintiff's claim that he received a written warning shortly after he attempted to obtain accommodations for his sprained ankle fails to rebut the legitimate, non discriminatory reason stated by Xerox for issuing the warning. Because plaintiff has failed to state a claim for retaliation, and has failed to

rebut the defendant's legitimate non-discriminatory reason for issuing a warning to him, I grant defendant's motion for summary judgment, and dismiss plaintiff's retaliation claim.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         March 27, 2015